MARY J. SPALDING, Respondent, v. FRED ZIEGLER and MRS. FRED ZIEGLER, Defendants, Respondents, and KANSAS CITY, Defendant, Appellant.

Kansas City Court of Appeals, June 30, 1913.

1. PERSONAL INJURIES: City Market: Projecting Ladders. The plaintiff sued to recover for personal injuries caused by the negligence of the defendant city in maintaining a ladder on the north side of Fourth street and near the market building, and of the other defendant for running against said

ladder, whereby it fell on the plaintiff and injured her. The plaintiff was waiting for her daughter near an entrance, designated as "C," when one of the defendants' wagons ran against a ladder that was projecting over the entrance "C" and between her and the building, and the ladder fell on the plaintiff, whereby she was knocked to the ground, the ladder falling across her legs, and the wagon ran over the ladder breaking her legs. *Held*, that there was sufficient evidentiary support for the conclusion that the negligence of the city was the sole cause of the injury.

2. ———: ———: **Duty of City.** When the person at the time of an injury is on a public street where she has a right to be, the city owes that person the duty of exercising reasonable care to keep the street free from dangerous traps and pitfalls.

3. ———: ———: **Duty of Market Master.** It was the duty of the market master and his assistant to exercise reasonable care to keep the interior of the building and its entrances in a reasonably safe condition and to see to it that the entrances were not blocked in any way to endanger people on the street and it was the duty of the policeman to see that the street was kept clear of dangerous obstructions.

4. **EVIDENCE: Direct Bearing on Issues of Notice.** It was not error to admit evidence relating to the character of the use of the building and the street, to the number of employees of the city on duty in and around the building, and to the duties of the various employees with respect to the removal or reporting of obstructions in the street and passageways. Such evidence had a direct bearing on the issues of actual and constructive notice to the city.

5. **INSTRUCTIONS: Non-direction.** An instruction, which embraces hypotheses under which the jury were authorized to find a verdict against all the defendants, or against the city alone, but omitted to include one for a verdict based on the idea that negligence of the driver of the wagon was sole cause of the injury, was not erroneous, but a mere non-direction.

6. **MISCONDUCT OF COUNSEL: Provocation: Remarks.** The improper remarks of counsel for plaintiff in the presence of the jury are excusable when they are provoked by counsel for defendant.

Appeal from Jackson Circuit Court.—*Hon. W. O. Thomas*, Judge.

AFFIRMED.

*A. F. Evans, J. W. Garner,* and *A. F. Smith* for appellant.

*W. W. Colvin* for respondent.

JOHNSON, J.—Plaintiff sued to recover damages for personal injuries she alleges were caused by the negligence of defendants. A trial in the circuit court resulted in a verdict and judgment for plaintiff against Kansas City in the sum of $5500, and against her as to the individual defendants, Fred Ziegler and his wife. The city alone appealed and the principal contention of its counsel is that the court erred in not peremptorily directing the jury to return a verdict in its favor.

Plaintiff who was sixty-four years of age was injured at eight o'clock in the evening of Saturday, October 8, 1910, on the north side of Fourth street between Main and Walnut streets in Kansas City. The street in this block runs between the old and new market houses and is paved the entire distance between the buildings but has no sidewalk in front of the new building which is on the north side of the street and extends back to Third street. The city owns and operates the market houses for revenue and had completed and opened the new building for business several days before the date of plaintiff's injury. Six paved driveways, designated respectively by the letters A, B, C, D, E and F, ran through the building from north to south and were separated by sidewalks on a higher level. Market wagons were driven into the building on these roadways and backed up to the sidewalks where business was transacted between the gardeners and their customers. Each roadway entered the building through a door or archway in the south end and one of these archways designated as "C" was the place of the act that culminated in the injury of plaintiff. That archway is eight feet seven inches wide and eighteen feet and four inches east of another

archway in the front of the building which connects Fourth street with one of the interior sidewalks. Plaintiff and her daughter had been marketing on this sidewalk and came into the street through the latter door with two filled baskets. On reaching the street the younger woman went back into the building to purchase some things she had forgotten, leaving plaintiff with the baskets to await her return. While waiting plaintiff stood in the street at a point three or four feet west of the entrance to the roadway designated as "C" and two or three feet in front of the building. A heavy ladder described by some of the witnesses as fourteen feet long, was lying on the pavement between plaintiff and the building with its east end projecting about two feet into entrance "C" and its west end near the pedestrian's entrance we have described. A market wagon, owned by the individual defendants and driven into entrance "C" by their employee, struck the projecting end of the ladder with enough force to swing its other and longer part out into the street and cause it to strike plaintiff who fell to the pavement with her legs under the ladder. While in this position the wagon ran over the ladder, breaking both of her legs.

The petition alleges "that defendant, Kansas City, Missouri, its agents, servants and employees carelessly and negligently placed, and carelessly and negligently allowed and permitted said ladder to be placed upon its sidewalk, at the time and place aforesaid, and in the place and position aforesaid, when it knew, or by the exercise of reasonable care might have known that said ladder, if placed, or allowed to be placed in the place and position aforesaid and at the time aforesaid, would render said sidewalk, at said point, dangerous and unsafe for travel or occupancy by pedestrians, and would likely cause and would cause damage and injury to pedestrians passing along or occupying said street at said point; and further carelessly and

negligently allowed and permitted said ladder to be and to remain in said place and position, for a sufficient length of time, after it knew, or by the exercise of reasonable care should have known, of its said place and position, to have removed the same from the place and position it occupied, and thus and thereby have rendered its sidewalk at said point reasonably safe for travel thereon, and thus and thereby have averted and prevented the injury to plaintiff, all of which, however, it carelessly and negligently failed and omitted to do.

"That defendants, Fred Ziegler and Mrs. Fred Ziegler, through their agent, servant and employee, carelessly and negligently failed and omitted to remove said ladder from its place and position aforesaid before attempting to drive their said team and wagon into and through said gateway or archway; and, carelessly and negligently, through their agent, servant and employee, drove their team and wagon into and through said gateway or archway and upon and against said ladder, which lay at said point, when they knew, or by the exercise of reasonable care might have known of the presence, place and position of said ladder; and when they knew, or by the exercise of reasonable care and foresight might have known and anticipated that if their said wagon were to come into contact with said ladder, in its said place and position, that the same might produce and would likely produce damage and injury to pedestrians who might be on the sidewalk at said point, or standing nearby, and within range of said ladder when the same would be set in motion by coming in contact with their said wagon," etc.

The ladder belonged to the city and all the evidence shows that when not in use it was kept lying in the street against the building and in the space between entrance "C" and the entrance for pedestrians. The market master introduced as a witness

by defendants testified that on the preceding day he saw the ladder lying "along in front of the wall between entrance 'C' and the pedestrian's entrance to the west of entrance 'C' and that the west end of the ladder projected a short distance into the pedestrian's entrance."

Another witness for the defendants, a policeman at the market, testified to seeing the ladder an hour or more before the injury lying against the front of the building with its east end projecting into entrance "C" and stated that he moved it westward but did not notice whether he moved it back far enough to place its other end in the pedestrian's entrance. Witnesses for plaintiff testified to seeing the ladder at various times on the day of the injury lying in the space between the two entrances. Sometimes it projected into one entrance and sometimes into the other. There is some evidence relating to the length of the ladder and to the distance between the two entrances to the effect that the wall space was longer than the ladder but we are inclined to question the accuracy of this evidence in view of the fact, about which there is no substantial controversy, that every time the ladder was shifted from obstructing one entrance, its other end always was thrust into the other. The policeman testified on cross examination: "Q. Wasn't it (the ladder) so long that if it was moved out of one entrance it projected into the other entrance? A. I didn't pay any attention to that. Q. You didn't pay any attention to see whether it was moved out of one entrance it went into another entrance? A. No, sir. . . . Q. You knew that wagons were passing in and out of that entrance all the time, too, didn't you? A. Yes, sir. Q. What was your object in pushing it away? A. So the wagons could go in and out without touching it."

The evidence most favorable to the cause of action pleaded against the city supports an inference that

the ladder had been kept in that place two days; that it was so long that it could not be kept there without obstructing one or the other of the two entrances and that the employees of the city who were charged with the duty of keeping the entrances free from dangerous obstructions negligently suffered the ladder to remain in a place that was both unsuitable and dangerous.

Counsel for the city throughout the trial in the circuit court and in their briefs before us appear to misconceive the nature of the pleaded cause and of the duty the city owed plaintiff. They argue that plaintiff's right to recover is restricted by her petition and should have been restricted in her proof to the precise state of facts that existed at the time of her injury; that the gist of her pleaded cause is the alleged negligence of the city in not discovering and removing the obstruction from entrance "C" and that since the uncontradicted testimony of the policeman shows that the obstruction had been removed from that entrance an hour before the injury there is no room in the evidence for a reasonable inference of negligence. Further they argue that it was error for the court to admit evidence of the prior obstructions of this entrance by the ladder. Plaintiff at the time of her injury was on a public street where she had a right to be and the city owed her the duty of exercising reasonable care to keep the street free from dangerous traps and pitfalls. The negligence as portrayed by her evidence consisted in keeping the ladder in the space between the two entrances where it would be in the way either of pedestrians using one entrance or of vehicles using the other.

The intermittent obstruction of each entrance should not be recognized as due to separate and independent wrongs but as the natural results of the single wrong of keeping the ladder in a place where it would obstruct the two passageways alternately and would menace the safety of persons rightfully on the street

while it was projecting in the way of vehicles using
entrance "C". Such being the nature of the action
the court properly received evidence tending to show
that the ladder had been kept in this place two days
in the manner we have described and that employees
of the city whose duty it was to remove or report such
obstructions had actual or constructive knowledge of
its presence. It was the duty of the market master
and his assistant to exercise reasonable care to keep
the interior of the building and its entrances in a reason-
ably safe condition and to see to it that the entrances
were not blocked in any way to endanger people on the
street and it was the duty of the policeman to see that
the street was kept clear of dangerous obstructions.
The court did not err in admitting evidence relating
to the character of the use of the building and the
street, to the number of employees of the city on duty
in and around the building, and to the duties of the
various employees with respect to the removal or re-
porting of obstructions in the street and passageways.
Such evidence had a direct bearing on the issues of
actual and constructive notice to the city.

We find no prejudicial error in the rulings of the
court on questions of evidence and the city's demurrer
to the evidence was properly overruled.

Objections to the first instruction given at the
request of plaintiff are found to be without merit.
This instruction is long but we do not find it unneces-
sarily verbose nor in any wise misleading. It embraces
hypotheses under which the jury were authorized to
find a verdict against all of the defendants, or against
the city alone, but omitted to include one for a verdict
based on the idea that negligence of the driver of the
wagon was the sole cause of the injury. Such an
inference has evidentiary support but plaintiff was
not compelled to include it in her instructions and its
omission from them could not be regarded otherwise

173 Mo App. 45

than as mere nondirection. The criticism that the instruction declares as a matter of law that it was negligence on the part of the city merely to leave the ladder in the position it was in at the time of the injury is based on a strained and unsound analysis of the language of the instruction.

Complaint is made of the refusal of the following instruction asked by the city: "The jury are instructed that if your finding in the case is in favor of the defendants Zieglers then your verdict must be for the defendant Kansas City."

That instruction was properly refused. While there was ample evidence before the jury to sustain a conclusion that the injury was caused by concurring negligence of the city in obstructing the wagon entrance and of the driver of the wagon in not avoiding the obstruction, there also is evidentiary support for the conclusion that the negligence of the city was the sole cause of the injury, and that the driver was not guilty of negligence in failing to see and avoid the ladder.

Other points made against the rulings of the court on instructions have been sufficiently answered in what we have said on the demurrer to the evidence. Much stress is laid in the briefs and arguments of the city on the subject of the alleged misconduct of counsel for plaintiff at the trial. Some of his remarks in the presence of the jury were improper but they were provoked by counsel for defendant city and were excusable under the circumstances. The case was fairly tried and the judgment is affirmed. All concur.